James T. FORTH, Appellant,

v.

NORTHERN STEVEDORING & HANDLING CORP., and Alaska Workmen's Compensation Board, Appellees.

No. 327.

Supreme Court of Alaska.

Oct. 21, 1963.

John M. Savage, of Clark & Savage, Anchorage, for appellant.

F. M. Doogan, of Faulkner, Banfield, Boochever & Doogan, Juneau, Plummer, Delaney & Wiles, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

AREND, Justice.

■ In a single specification of error set forth in his brief on appeal the appellant, an injured workman, charges that "the Superior Court committed error in granting judgment wherein it held that 'some' evidence was sufficient to support a decision of the Alaska Workmen's Compensation Board and wherein it held that there was some evidence in the record of this case to support the Board's decision." This specification is improper because it actually alleges two errors and therefore need not be considered.[1] However, we have examined the entire brief and find manifest therein a bona fide effort to comply with the supreme court rules; so we shall proceed to determine the issues raised.

The appellant contends primarily that the trial court erred as a matter of law in affirming the Board's decision in favor of the appellee employer, on the basis of the court's finding of merely some evidence to support the Board's decision. This, says the appellant, was in contravention of section 25 of the Alaska Administrative Procedure Act[2] (hereinafter referred to as the APA) which requires that the Board's decisions be supported by substantial evidence in the light of the whole record.

Before attacking the legal problem presented, we give the following statement of the case: On September 13, 1960, the appellant, while employed by the appellee Northern Stevedoring & Handling Corporation, was injured and received compensation for his injury, totaling $4,300 until July 14, 1961, after which date all further compensation was terminated by the employer's insurance carrier. The injury mentioned constituted an aggravation of a pre-existing condition in the appellant's back and right hip. This condition was described as extensive and advanced osteoarthritic and hypertrophic changes involving the dorsal and lumbar spine, intervertebral discs and the right hip. '

The appellant testified before the Board on October 26, 1961, as being fifty-five years of age and a longshoreman by trade; that he felt good and "worked four years straight all the time" just before the accident of September 13, 1960; and that he has been unable to work since the accident and does not think that he will ever be able to go back to work at longshoring. On cross-examination he admitted that he had received bodily injuries on seven different occasions between 1950 and the date of the accident which gave rise to this litigation, and that his shoulders "are both haywire right today." He also recalled an injury to his right leg as a preschool age

1. Parks v. Brown, Opinion No. 57, 368 P. 2d 220 (Alaska 1962); McLemore v. Harris, Opinion No. 102, 374 P.2d 410 (Alaska 1962).

2. SLA 1959, ch. 143 [AS 44.62.010 through 44.62.650].

child which hospitalized him and required him to wear a cast.

Dr. Perry Meade, a neuro surgeon, called as a witness by the appellant, stated that he first examined the appellant on the day previous to testifying and found him to be a man weighing 230 pounds, height five feet ten inches, and suffering from high blood pressure. It was the doctor's opinion that the fall on September 13, 1960, caused the appellant's present condition and resulted in a present sixty per cent disability of the whole man, none of which could be attributed to previous injuries or back difficulty, including degenerative changes.

The appellees rely chiefly upon the testimony of their witness Dr. William J. Mills, an orthopedic surgeon, who examined the appellant for the first time about three and a half weeks after the subject accident upon referral by the latter's family physician. Dr. Mills gave the appellant a complete orthopedic and neurological examination and took x-rays. He saw the appellant again on April 20, 1961. The doctor testified that these examinations and x-rays demonstrated in the appellant very marked hypertrophic and osteoarthritic changes of the lumbar and dorsal spine and the intervertebral discs, as well as osteoarthritic and degenerative changes of the right hip. It was his opinion that these changes were all older than a year when he examined the appellant, some of them having taken many years to develop.

We quote from the transcript of testimony given at the hearing before the Board the following answers by Dr. Mills to questions whether any of the applicant's present disability could be due to his condition before the accident:

"[Q.] What I am asking you is there any portion of his present disability in his back due to this injury of September 13, 1960?

"[A.] * * * The man has demonstrated considerable disease that was present both back and hip before the injury that he discussed with me. He had an injury that could have aggra-vated all of that underlying condition. I don't think, I didn't think then, and I don't think now that if he does the job that I picture a longshoreman doing that he can do that job. I think he was disabled before the injury and I consider him disabled now. I think it is most difficult to separate what he had before and what he has now. I think there is not an awful lot of change. I think he had aggravation. I would expect him to be by this length of time where he was before his injury, and as I advised you this is difficult because that was in very poor condition.

"[Q.] * * * Assume for the sake of argument that the man is 60 percent disabled. That is the total of his disability. Is that disability due to the injury of 9–13–60 or is it due to the preexisting condition?

"[A.] I consider that most, if not all of his total disability is probably due to the condition he had prior to his injury."

On cross-examination Dr. Mills conceded that it was possible for the injury of September 13 to "have been the straw that broke the camel's back."

It appears that, after the hearing before the Board, the appellant was examined by two additional doctors. These were Rodman Wilson, an internist, and George Wichman, an orthopedic specialist. Both submitted written reports to the Board. Dr. Wilson, on November 17, 1961, gave the following diagnosis:

"With reference to the severe osteoarthritis of the spine, my opinion as to the sequence of events is as follows: The condition has probably been present for many years and has been slowly progressive. The cause of osteoarthritis is not known but occurs particularly in the spine of heavily muscled, overweight individuals. Single or repeated injury does not cause the disorder but once the process is present, injury can aggravate it. In Mr. Forth I surmise that repeated reported and unreported

minor and major injuries to the back have aggravated (but not caused) his long-standing and pre-existing severe osteoarthritis of the spine. Many individuals with equally extensive and severe osteoarthritis of the spine have virtually no symptoms and are able to continue heavy labor. For reasons not clear to me, Mr. Forth has had an unusual amount of pain and radiation of pain within the past year from his arthritis or aggravating injury. In my opinion, the prognosis is poor for recovery from this condition. The arthritis will not spontaneously regress and will probably progress slowly."

Dr. Wichman stated in his report of December 7, 1961, that, while the appellant's spine in the x-rays examined looked "horrible," it was no different than that of other individuals of similar build, occupation, age and weight, suffering from the same advanced hypertrophic and osteoarthritic changes, yet able to be active and fully employed. Since the nerve roots did not appear involved and the vertebral bodies. did not show any fractures, the doctor surmised that the soft tissues or the ligaments of the spine may have been injured. The doctor then commented as follows: .

"In my personal experience, soft tissue damage of that nature which is referred to as a sprain, heals as soon as the injured member is 'at rest' for a period of three to four weeks. In this instance the healing, according to Mr. Forth's subjective complaints, has not taken place. I do not understand why.

"As to the question of permanent partial disability in this instance it is again difficult to evaluate. A permanent partial impairment of the member is given for objective findings that can be demonstrated by anybody on the x-rays, clinical examinations, etc. This should be objective. None of the previous examiners to my knowledge have demonstrated anything objective except the presence of spurs and degenerative changes involving the spine and the right hip which is on the opposite side of the patient's pain. In my opinion the actual impairment of the back as compared to the time just prior to the accident is very minimal. * * *"

With the foregoing facts, testimonials and reports before it the Board, as the basis for dismissing the appellant's application for adjustment of claim, found:

3. That applicant's condition preexisting said injury was extensive and advanced osteoarthritic and hypertrophic changes involving the dorsal and lumbar spine, intervertebral disks and right hip.

4. That said injury of September 13, 1960 resulted in applicant being temporarily disabled for a period not extending beyond July 13, 1961 and on or before said date applicant completely recovered from any aggravation effects or disability caused by said injury of September 13, 1960.

The appellant appealed to the superior court from the Board's order dismissing his application, alleging that the findings of the Board were not supported by the evidence and that its decision was contrary to law. These allegations were traversed by the employer. The superior court from an examination of the files and record in the case, certified by the Board, found that the Board's decision was in accordance with law and that there was "sufficient evidence in the record to support the findings of fact * * * set forth in such decision." The court then affirmed the decision of the Board and dismissed the appeal.

The first three subdivisions of section 25 [AS 44.62.570(b) and (c)] of the Alaska APA provide that, on appeal to it from an administrative agency decision [3] the su-

---

3. Section 2 of the Alaska APA [AS 44.62.-330] provides that the procedure set forth in the act shall apply to the Alaska Workmen's Compensation Board. AS 44.62.330 adds: "where procedures are not otherwise expressly provided by the Alaska Workmen's Compensation Act"

perior court shall inquire, among other things, whether there was any prejudicial abuse of discretion; that abuse of discretion is established if the findings are not supported by the evidence; and that where it is claimed that the findings are not supported by the evidence such abuse of discretion is established only if the court finds that the findings are not supported by the weight of the evidence, or are not supported by substantial evidence in the light of the whole record.[4]

The parties seem to be agreed that the test to be applied for the purposes of this case is whether the findings of the Board which have been challenged by the appellant are supported by substantial evidence in the light of the whole record. The appellant does not question the fact that the superior court considered the whole record, but he does say that the court employed the wrong standard for the kind of evidence required to support the findings of the Board, in other words, he says that the lower court required only some evidence to support the findings whereas the APA says that there must be substantial evidence.

In examining the proceeding in the superior court we note, as pointed out by the appellant, that the superior court judge in his oral comments to counsel at the time of the hearing used such terms as "any evidence" and "some evidence" to describe the kind of evidence he considered necessary to sustain the findings and decisions of the Board. At one point he even commented that if the evidence supporting the Board were "so slight as to be almost negligible" he could reverse. While the terminology used by the trial judge in his oral comments is incorrect, it is evident to us from a reading of the entire transcript of the proceedings in the superior court that the judge was aware of his responsibilities and limitations under section 25 of the Alaska APA; that he considered the entire record before him, including the appellant's testimony and the medical evidence for and against him; and that he applied the right test in evaluating the evidence upon which the Board based its findings of fact.

In the case of Keiner v. City of Anchorage,[5] we stated that an administrative board's findings should not be reversed if in the light of the whole record they are supported by substantial evidence, defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[6] Judging by that test, we are of the opinion that in the instant case there was such relevant evidence to support the findings which are objected to by the appellant. We conclude that the superior court did not err in affirming the Board's findings.

The appellees have raised a separate issue in their brief to the effect that we should refuse to hear the appellant's appeal for the reason that the appellant did not take a timely appeal to the superior court from the decision of the Board. This

4. The full text of the first three subdivisions of section 25 of the Alaska APA reads:

"Sec. 25. Scope of Review. (1) All appeals shall be heard by the Superior Court sitting without a jury.

"(2) The inquiry in such a case shall extend to the questions whether the agency has proceeded without, or in excess of jurisdiction; whether there was a fair hearing; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.

"(3) The Court is authorized and empowered to exercise its independent judgment on the evidence and where it is claimed that the findings are not supported by the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; or not supported by substantial evidence in the light of the whole record."

5. Opinion No. 126, 378 P.2d 406 (Alaska 1963).

6. Id. 378 P.2d at 411.

is equivalent to asking us to render now a decision more favorable to them than they received below. That we may not do absent

a cross appeal to this court by the appellees.[7]

Affirmed.

7. See Alaska Industrial Bd. v. Chugach Elec. Ass'n, Inc., 356 U.S. 320, 78 S.Ct. 735, 2 L.Ed.2d 795 (1958); Annot., 1 L. Ed.2d 1820 (1957).